**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

HAMID ZIAEI,

      Petitioner,

v.                                                                      No. 1:25-cv-01111-MLG-KBM

MELISSA ORTIZ, Acting Warden, Torrance
County Detention Facility; JOEL GARCIA, Field
Office Director, El Paso Field Office, United
States Immigration and Customs Enforcement;
TODD M. LYONS, Acting Director, United
States Immigration and Customs Enforcement;
KRISTI NOEM, Secretary of Homeland Security;
PAMELA JO BONDI, United States Attorney
General, in their official capacities,

      Respondents.

**ORDER GRANTING PETITIONER'S PETITION AND
DENYING RESPONDENTS' MOTION TO DISMISS**

Petitioner Hamid Ziaei, an Iranian citizen, was detained by Respondents nearly six months ago at a scheduled appointment with Immigration and Customs Enforcement ("ICE") in Santa Ana, California. Doc. 1 ¶¶ 63-64; Doc. 13-1 ¶ 5. He is currently detained at the Torrance County Detention Facility in Estancia, New Mexico. Doc. 1 ¶ 66. Ziaei's Verified Petition for a Writ of Habeas Corpus ("Petition") seeks immediate release on the grounds that his detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution; the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559, 701-706; the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537; and the INA's implementing regulations. *See generally* Doc. 1. In response, Respondents filed a Motion to Dismiss ("Motion"), arguing that Ziaei's Due Process Clause claim is not ripe, and that his continued detention is otherwise lawful. *See generally* Doc. 12.

1

The Court held a hearing on the Petition and Motion on December 15, 2025. For the reasons set forth, the Court grants the Petition and denies the Motion.

## BACKGROUND

Ziaei entered the United States on January 29, 2024, was immediately detained by immigration officials, and was then placed in removal proceedings. Doc. 1 ¶¶ 45-46; *see also* Doc. 13-1 ¶ 3. An immigration judge ("IJ") denied Ziaei asylum and entered an order of removal to Iran on June 10, 2024, which became administratively final on August 9, 2024. Doc. 1 ¶¶ 47, 67; Doc. 15-1 at 2, 4. The IJ granted withholding of removal to Iran, however, because Ziaei "established that he was more likely than not to be persecuted in Iran if he were returned." Doc. 1 ¶ 47; Doc. 15-1 at 2. ICE released Ziaei under an Order of Supervision on June 12, 2024. Doc 1. ¶ 48. Ziaei maintains that he complied with all terms of his Order of Supervision and that he does not have a criminal record or pending criminal charges, but he was nevertheless re-detained at his scheduled appointment with ICE on June 26, 2025. *Id.* ¶¶ 53-54, 63-64; *see also* Doc. 15 ¶ 11. According to the Declaration of ICE Assistant Field Officer Director William S. Shaw, Sr. ("Shaw Declaration"), Ziaei was re-detained that day because ICE had "determined that there was significant likelihood of removal to a third country[.]" Doc. 13-1 ¶ 5.

Ziaei asserts that "ICE did not seek his cooperation to obtain travel documents to any third country prior to his re-detention" and that Respondents have not identified a "third country . . . to which they are actually attempting to remove Petitioner." Doc. 1 ¶¶ 71, 83; Doc. 15 ¶ 11. He additionally alleges that "Respondents have not initiated any process to remove [him] to a third country." Doc. 1 ¶ 101. Ziaei is "not a citizen of any other country other than Iran, and neither are [his] parents." Doc. 15 ¶ 20. The Shaw Declaration provides that on September 28, 2025, ICE "reached out to Headquarters Removal and International Operations (HQ-RIO) to assist with the

request to remove [Ziaei] to a third country." Doc. 13-1 ¶ 8. As of November 28, 2025, ICE was still "waiting for HQ-RIO to coordinate an interview with a foreign embassy that may accept him." Doc. 13-1 ¶ 9. At the December 15, 2025, hearing, federal Respondents stated that there were no additional updates regarding the third-country removal process.

## LEGAL STANDARD

Federal courts have jurisdiction under 28 U.S.C. § 2241 to hear challenges to post-removal-period detentions like the one presented here. *See Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001) (concluding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention"); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (providing that "[c]hallenges to immigration detention are properly brought directly through habeas"). When evaluating such claims, "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700.

## DISCUSSION

### I.     The Court Has Subject Matter Jurisdiction to Hear Ziaei's Due Process Claim

Respondents argue that Ziaei's claim is not ripe because his detention has not yet surpassed the six-month period deemed presumptively reasonable by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Doc. 12 at 3, 8. "[W]hether a claim is ripe for review bears on a court's subject matter jurisdiction under the case or controversy clause of Article III of the United States Constitution." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498-99 (10th Cir. 1995); *see also North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them."). "As a general rule, determinations of ripeness are guided by a two-factor test."

3

*Gonzales*, 64 F.3d at 1499. Courts first review "whether an issue is fit for judicial review," an analysis that is focused on "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (internal quotation marks omitted) (quoting 13A Wright, Miller & Cooper, Federal Practice & Procedure, § 3532). The second factor is "the hardship to the parties of withholding judicial resolution, [an] inquiry [that] 'typically turns upon whether the challenged action creates a "direct and immediate" dilemma for the parties.'" *Id.* at 1499 (quoting *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 495 (1st Cir. 1992) (quoting *W.R. Grace & Co. v. United States EPA*, 959 F.2d 360, 364 (1st Cir. 1992))).

Respondents do not argue Ziaei's Petition is unripe under this standard. Instead, they argue that the Petition is not ripe because Ziaei's detention is constitutional—i.e., Ziaei's challenge under the Due Process Clause of the Fifth Amendment to the United States Constitution will not succeed. *See* Doc. 12 at 3, 8. But whether the Petition may succeed "is a merits question, not a question of ripeness." *See Flaxman v. Ferguson*, 151 F.4th 1178, 1188 (9th Cir. 2025).

Ziaei challenges the legality of his ongoing detention, freedom from which "lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." *See Zadvydas*, 533 U.S. at 690. He is not seeking "premature adjudication . . . [of an] abstract disagreement[]." *Gonzales*, 64 F.3d at 1499 (internal quotation marks omitted) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). Nor does his claim "hinge[] on uncertain future events" or require "further factual development." *Gonzales*, 64 F.3d at 1504 (concluding that a dispute was ripe for review because it "neither hinge[d] on uncertain future events nor [wa]s further factual development required").

The Court therefore concludes it has subject matter jurisdiction to decide Ziaei's claim.

**II.     Ziaei's Continued Detention Is Unreasonable Under *Zadvydas*[1]**

Because Ziaei has been ordered removed and has been detained for more than 90 days, his current detention falls under 8 U.S.C. § 1231(a)(6), which permits detention beyond the initial 90-day removal period for certain undocumented noncitizens.[2] But the statute does not authorize indefinite detention. *Zadvydas*, 533 U.S. at 682, 688-89, 699. Instead, continued detention beyond the removal period is limited to a "period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. "[F]or the sake of uniform administration in the federal courts," the *Zadvydas* Court recognized that six months of detention is "presumptively reasonable." *Id.* at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Although some jurisdictions interpret *Zadvydas* as barring any challenge to continued detention under § 1231(a)(6) prior to the end of the six-month period,[3] this Court joins those

---

[1] Ziaei's other claims and request for declaratory relief are rendered moot by the Court's conclusion that Ziaei must be released because his continued detention is unreasonable under *Zadvydas*. The Court therefore does not address the merits of the other issues presented by the Petition. *See S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) ("A federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it.").

[2] "[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days," known as the removal period." 8 U.S.C. § 1231(a)(1)(A). "Continued detention under [Section 1231(a)(6)] creates the 'post-removal-period.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021).

[3] *See, e.g.*, *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (concluding that the petitioner failed to state a claim under *Zadvydas* because he had not been detained for more than six months when he filed his petition); *Okpoju v. Ridge*, 115 F. App'x 302, 302 (5th Cir. 2004) ("The district court properly denied [the petitioner's] claim regarding his continued detention as premature because, at the time of the district court's ruling, [the petitioner] had not yet been in custody longer than the presumptively reasonable six-month post removal order period.").

finding that the presumption may be rebutted before a petitioner spends six months in detention.[4]

This is because "*Zadvydas* did not hold that [§ 1231(a)(6)] authorizes detention until it approaches

constitutional limits[.]" *Clark v. Martinez*, 543 U.S. 371, 384 (2005). Instead, *Zadvydas* "held that,

*since* interpreting the statute to authorize indefinite detention (one plausible reading) would

approach constitutional limits, the statute should be read (in line with the other plausible reading)

to authorize detention only for a period consistent with the purpose of effectuating removal." *Id.*

The six-month period is commonly calculated as 180 days,[5] and this period ends in Ziaei's

case on December 23, 2025.[6] To rebut the presumptive reasonableness of his continued detention

---

[4] *See Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wis. 2008) ("Nothing about [the *Zadvydas*] scheme supports the conclusion drawn by many courts that the presumptive legality of detention within the first six months is irrebuttable."); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395 (D.N.J. 2025) ("Although the Supreme Court established a six-month period of presumptively reasonable detention, it did not preclude a detainee from challenging the reasonableness of his detention before such time."); *Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025) ("The reasoning in *Zadvydas* suggests that before the six-month period expires, the burdens of production and persuasion remain with a person who has been detained, to establish that removal is not reasonably foreseeable."); *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 708 (S.D. Tex. 2020) ("Whereas the *Zadvydas* Court established a presumption that detention that exceeded six months would be unconstitutional, it did not require a detainee to remain in detention for six months or to prove that the detention was of an indefinite duration before a habeas court could find that the detention is unconstitutional.").

[5] *See, e.g.*, *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90–day removal period plus 90 days thereafter."); *Lyon v. United States Immigration & Customs Enf't*, 171 F. Supp. 3d 961, 978 (N.D. Cal. 2016).

[6] The Court calculates the six-month period as beginning when Ziaei was re-detained on June 26, 2025, because *Zadvydas* addressed the question of whether § 1231(a)(6) authorizes indefinite "post-removal-period *detention*." *Zadvydas*, 533 U.S. at 683, 689-90 (emphasis added); *see also Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala. 2011) ("Because *Zadvydas* clearly involved *detention* of a petitioner during the presumptively reasonable period, it defies common sense to suggest that *Zadvydas* time can run while a petitioner is not in custody."). Ziaei's detention from late January 2024 through June 12, 2024, occurred prior to the removal period, which began when his removal order becoming administratively final on August 9, 2024. *See* § 1231(a)(1)(B).

at this stage, Ziaei must demonstrate that there "is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 at 701; *see also Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395 (D.N.J. 2025) ("In practical terms, before the six-month period elapses, the government bears no burden to justify detention, and the petitioner must claim and *prove*, that his removal is not reasonably foreseeable."). The Court is mindful that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701.

The Court concludes Ziaei has met his burden here. Ziaei was granted an order withholding removal to Iran, the only country where he is a citizen. Docs. 15 ¶ 20; 15-1 at 2. *See Zavvar v. Scott*, Civil Action No. 25-2104-TDC, 2025 LX 377714, at *23 (D. Md. Sep. 8, 2025) ("A grant of withholding of removal 'substantially increases the difficulty of removing' an individual." (quoting *Munoz-Saucedo*, 789 F. Supp. 3d at 398)). And during his 172 days of post-removal detention, Respondents have not identified a third country willing to accept him. Doc. 15 ¶ 20; Doc. 13-1 ¶¶ 8-9. Ziaei asserts that Respondents failed to pick up paperwork related to obtaining travel documents for him that they left with Ziaei to fill out in July 2025. Doc. 15 ¶ 13. Under similar circumstances, courts have found continued detention unreasonable. *See Munoz-Saucedo*, 789 F. Supp. 3d at 399-400 (granting the petitioner's release where the petitioner showed "he cannot be removed to his country of origin, that ICE has had historically low success in removing similar individuals, that ICE made a total of six requests to other countries in 2023 and 2025 to no avail, . . . and at present, there is no country willing to accept him or currently considering a request to accept him"); *cf. Cesar v. Achim*, 542 F. Supp. 2d 897, 905  (E.D. Wis. 2008) (stating that "if plaintiff could show, for example, that the government was not taking steps to effectuate his removal, then there would be no exercise of knowledge or expertise unique to the Executive

7

Branch to justify any deference, removal likely would not be reasonably foreseeable, and detention would therefore be unconstitutional").

With only six business days left before the six-month period ends, and nearly six months since they "determined that there was significant likelihood of removal to a third country," Doc. 13-1 ¶ 5, Respondents have not identified a third country willing to accept Ziaei. At the December 15, 2025, hearing, Respondents did not have any update on the status of their search for such a country. That leaves the Court with the Shaw Declaration from November 28, 2025, which provides that ICE's Enforcement and Removal Operations is awaiting ICE's Headquarters Removal and Internation Operations "to coordinate an interview with a foreign embassy that may accept [Ziaei]." Doc. 13-1 ¶ 9. That is insufficient at this point.

Accordingly, the Court concludes that Ziaei's continued detention is unreasonable because he has demonstrated there "is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 at 701.

## CONCLUSION

The Court therefore grants the Petition, denies the Motion, and orders the following:

(a)    Respondents must release Ziaei under appropriate conditions of supervised release within 24 hours of this Order's filing; and

(b)    Respondents must file a status report with the Court by 5 p.m. December 17, 2025, confirming Ziaei's release from custody.

It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

8